# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1.  **DR. COURTNEY SKIPPER-REYNOLDS,** | )<br>) |
| **Plaintiff,** | )<br>) |
| vs. | ) Case No.  21-cv-224-GKF-SH<br>) |
| 1.  **TULSA COMMUNITY COLLEGE,** | )<br>) |
| **Defendant.** | ) |

## COMPLAINT
### (JURY TRIAL DEMANDED)

Plaintiff, Dr. Courtney Skipper-Reynolds through her attorney of record, Melvin C. Hall of Riggs, Abney, Neal, Turpen, Orbison & Lewis, files this Complaint against Defendant, Tulsa Community College. In support of her Complaint, Plaintiff states as follows:

## PRELIMINARY STATEMENT

1. This action arises under the provisions of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866, 42 U.S.C. § 1981, to address the deprivation of her rights from discriminatory and retaliatory employment practices by Tulsa Community College

## JURISDICTION AND VENUE

2. The court has jurisdiction over this Complaint in that the matters in controversy arise under the laws of the United States, 28 U.S.C. §§ 1331 and 1343(a).

3. Venue is proper in this court pursuant to 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff, Dr. Courtney Skipper-Reynolds (Dr. Skipper) is an African American citizen of the United States, a resident of the City of Tulsa, Tulsa County, Oklahoma, and this judicial district. Plaintiff was employed with Defendant for a total of two years, from August 2018 to August 2020, in the positions of writing consultant and adjunct professor.

5. Defendant, Tulsa Community College (TCC) is an Oklahoma employer doing business in the City of Tulsa, Tulsa County, Oklahoma, and this judicial district.

## INTRODUCTION

6. This action arises under the provisions of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866, 42 U.S.C. § 1981. Dr. Skipper is seeking declaratory relief, injunctive relief, damages, including actual damages and compensatory damages to address the deprivation of her rights from discriminatory and retaliatory employment practices on the basis of her race and protected activity by Tulsa Community College.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Dr. Skipper's Charge of Discrimination was timely filed with the Equal Employment Opportunity Commission on December 15, 2020.

8. The EEOC assigned Ms. Green's Charge of Discrimination with Charge Number 564-2020-01025.

9. On February 23, 2021, the EEOC issued a Notice of Right to Sue for this charge.

10. This lawsuit is filed within 90 days of receipt of Dr. Skipper's Notice of Right to Sue.

11. Dr. Skipper has exhausted all administrative remedies under federal law.

## STATEMENT OF THE CASE

12. Dr. Skipper began her employment with TCC in August 2018, as an adjunct professor teaching English writing. In October 2018, she also became a writing consultant for TCC.

13. Dr. Skipper received her Ph.D. in Educational Leadership in February 2020.

14. Throughout her employment with TCC, Dr. Skipper successfully performed her job duties including, receiving letters of recommendation from her supervisor, April Faith Williams

(Ms. Williams), Supervisor of the Southeast Writing Center and Sidney Teel, Director of the Writing Center.

15. On October 5, 2018, the second day of Dr. Skipper's employment, Ms. Williams (white female) walked up to Dr. Skipper, and told Dr. Skipper that while she was working in a bar in Arkansas the bartender said, "get those niggers out of here." Dr. Skipper was totally shocked by the statement, but kept working as Ms. Williams walked away.

16. The policy and practice in the Writing Center was to allow the writing consultant to schedule their own breaks after four writing sessions with clients. However, when Dr. Skipper attempted to schedule her breaks, she could not. Dr. Skipper was told by Ms. Williams that she could not put in a break, and that Joshua Jones, a part time employee, would put in the break information for Dr. Skipper.

17. Dr. Skipper was the only writing consultant who was blocked from scheduling her own breaks. Also, Dr. Skipper was the only writing consultant who was assigned a seat to work from. Dr. Skipper could only work from a location that was right in front of Ms. Williams' desk.

18. In November 2018, Dr. Skipper complained to Dr. Corince Wilson (African America), Dean of English for the Southeast Campus of TCC.

19. Dr. Skipper complained to Dr. Wilson that Ms. Williams told her she would fire her if she did not work the shifts of other writing consultants because another writing consultant, Heather, wanted to attend her son's baseball game and Amber Trent did not want to work nights anymore.

20. Dr. Skipper reported to Dr. Wilson about the niggers being threatened in the bar.

21. And Dr. Skipper reported to Dr. Wilson that after she had called in stating that she would be late for work, Ms. Williams screamed at Dr. Skipper when she arrived at work, stating, "A student is out here waiting on you. You didn't call in, you are late, you are supposed to call

in." Dr. Skipper explained that she did call in to report that she would be late, and requested that Ms. Williams stop screaming at her. Ms. Williams then said, "You're playing the race card." Dr. Skipper replied, "I'm not playing the race card because I am black."

22. Dr. Skipper also reported to Dr. Wilson that it was humiliating to have students and part time workers to change her schedule for her.

23. Dr. Wilson told Dr. Skipper, "Don't worry about it. I'm going to talk to April Williams about it."

24. Dr. Wilson did not say she would conduct an investigation. She did not state she would correct the instances of racism that Dr. Skipper had reported and complained about. Instead, Dr. Wilson talked to Dr. Skipper about personal things: the size of her house, what she paid for her house, her son's activities, her marriage to her husband, …

25. On December 13, 2018, Dr. Skipper requested another meeting with Dr. Wilson.

26. On December 18, 2018, Dr. Wilson and Dr. Skipper met. Dr. Skipper complained that she was treated differently because of her race. Dr. Skipper explained how humiliating it was to be blocked from making her own schedule. Ms. Williams told Dr. Skipper she was the only African American to ever work in any of the four writing centers, and that because she hired her, she should be happy. Dr. Wilson's response was the same as before: she encouraged Dr. Skipper to hang in there- knowing that Dr. Skipper was applying for another job at TCC.

27. On February 19, 2019, Dr. Skipper sent an email to Dr. Wilson requesting yet another meeting.

28. On February 20, 2019 at 11:00 a.m., Dr. Skipper met with Dr. Wilson to complain about changing the schedule to work the shifts of Heather and Amber, and that she was the only writing instructor working 12 hour shifts, 2 days straight, or she would be fired according to Ms. Williams. Dr. Wilson said, she's not going to fire you. Don't worry about it.

4

29. Dr. Skipper reported that the other white writing consultants were starting to treat her differently by not speaking to her. This is because Ms. Williams had said she could make people do anything or fire them, and the other writing consultants didn't want Ms. Williams to think they were on Dr. Skipper's side.

30. On March 27, 2019, Dr. Skipper wrote an email to Dr. Wilson complaining about Ms. Williams' failure and apparent refusal to write Dr. Skipper a reference letter.

31. On April 4, 2019, Dr. Skipper sent an email to Jeff Owens, HR Director regarding the reference letter not being received from April Williams.

32. Dr. Wilson scheduled a meeting with Ms. Williams and Dr. Skipper, but only Dr. Skipper showed up.

33. Dr. Skipper then texted Dr. Wilson who later called Mr. Owens to schedule a meeting.

34. On April 15, 2019, Dr. Skipper met with Mr. Owens.

35. During the April 15, 2019, meeting Mr. Owens typed out all the information.

36. On April 25, 2019, Dr. Skipper was suspended with pay from her consulting position pending an investigation. Dr. Skipper never returned to that position at the Southeast Campus.

37. On May 25, 2019, Mr. Owens reassigned Dr. Skipper to the Northeast Campus. Dr. Kelly Cory was Dr. Skipper's new supervisor at the Northeast Campus.

38. While at the Northeast Campus the harassment and retaliation continued against Dr. Skipper.

39. On March 30, 2020, TCC's Office of Civil Rights Compliance issued a 60 page confidential investigative report where they found no discrimination or retaliation regarding any of the allegations made by Dr. Skipper.

40. A few months thereafter, Dr. Skipper was notified that her employment at TCC would not be renewed.

## COUNT I
## Discrimination Based on Race

41. Dr. Skipper incorporates by reference all previous allegations.

42. Dr. Skipper, as an African American, is in a protected class.

43. Dr. Skipper met the objective qualifications for the positions she held at TCC.

44. Dr. Skipper suffered an adverse employment action with her July 2020, termination.

45. Dr. Skipper's positions were not eliminated after her termination.

46. Tulsa Community College engaged in intentional and unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866, 42 U.S.C. § 1981. The discriminatory practices include, but are not limited to, Dr. Skippers's termination on July 2020, due to her race, in violation of the above referenced federal statutes.

## COUNT II
## Retaliation

47. Dr. Skipper incorporates by reference all previous allegations.

48. Dr. Skipper engaged in multiple acts of protected activity.

49. Dr. Skipper suffered an adverse employment action with her July 2020, termination.

50. There existed a causal connection between the protected activity and the adverse employment action.

51. Tulsa Community College engaged in intentional, unlawful, and retaliatory employment practices in violation of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866, 42 U.S.C. § 1981. The retaliatory practices include, but are not limited to, terminating

Dr. Skipper in July 2020, due to her protected opposition to the intentional and unlawful employment practices of Tulsa Community College

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Dr. Courtney Skipper-Reynolds, seeks to recover against Defendant, Tulsa Community College:

1. Actual damages in the form of lost back pay and benefits.

2. Reinstatement, however, in lieu of reinstatement, Dr. Skipper seeks front pay and all lost future earnings projected out five years.

3. Compensatory damages for future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

4. Reasonable attorney fees and court costs, as well as other relief as the court deems appropriated

        Respectfully submitted,

        RIGGS, ABNEY, NEAL, TURPEN,
          ORBISON & LEWIS

        s/ Melvin C. Hall
        Melvin C. Hall, OBA No. 3728
        528 NW 12th Street
        Oklahoma City, OK 73103
        Telephone: (405) 843-9909
        Facsimile: (405) 842-2913
        Email: mhall@riggsabney.com

**ATTORNEY'S LIEN CLAIMED**
**JURY TRIAL DEMANDED**