IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) COURTNEY SKIPPER-REYNOLDS, )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>(1) TULSA COMMUNITY COLLEGE,  )<br>)<br>Defendant.  ) | Case No. 21-CV-00224-GKF-SH |

**DEFENDANT TULSA COMMUNITY COLLEGE'S
<u>SPECIAL APPEARANCE AND MOTION TO DISMISS</u>**

Defendant, Tulsa Community College ("Defendant" or "TCC"), specially appears and respectfully moves for dismissal of all claims against it pursuant to FED. R. CIV. P. 12(b)(5) for insufficient service of process. Even if the Court decides against dismissal of the entire lawsuit, Plaintiff's claims arising under 42 U.S.C. § 1981 and for punitive damages arising under Title VII should be dismissed pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted. In support of this Motion, TCC states as follows:

**INTRODUCTION**

Plaintiff is a former part-time tutor who worked at multiple writing centers for TCC from 2018 through the summer of 2020. While TCC disputes the substance of Plaintiff's allegations, there are legal and procedural hurdles to Plaintiff's claims which cannot be cleared.

Plaintiff failed to serve process on TCC within the time provided in Rule 4(m). Plaintiff waited until the last day permitted to attempt to serve process and then failed to do so properly. While Plaintiff attempts to shift the blame for her own miscomprehension of the service rules to Defendant, TCC's investigation into her Response to the Court's Second Order to Show Cause [Doc. No. 12] reveals significant potential inconsistencies with the narrative presented to the

Court. While Plaintiff's counsel swore that he called TCC on or around August 19, 2021, to inquire as to the address for TCC's CEO, Defendant does not have any record of a phone call from Plaintiff's counsel's office prior to August 30, 2021. Further, on that call—which was recorded—Plaintiff's counsel makes no mention of a previous call or attempt to locate TCC's CEO. Instead, Plaintiff's counsel implies that he looked up TCC's service information on the Internet and was confounded by the Court's Show Cause Order [Doc. No. 8]. While TCC understands Plaintiff's counsel did, in fact, present a copy of the Amended Complaint and Summons to a security guard, it cannot locate any evidence that a staff member refused his request for the CEO's address or instructed him to leave the Amended Complaint and Summons at the "Skelly Drive building."

Further, Plaintiff's claims under 42 U.S.C. § 1981 ("Section 1981") are improper. TCC is an agency of the State of Oklahoma and there is no private right of action against a state—or an arm thereof—under Section 1981. All Section 1981 claims against a state actor must be brought under 42 U.S.C. § 1983 ("Section 1983"). Moreover, the Supreme Court has expressly held that the term "person" as used in that statute does not mean "state" and, therefore, Section 1983 claims cannot be brought against the state or an arm thereof. As such, Plaintiff's claims under Section 1981 cannot stand against TCC, a state agency.

Additionally, Title VII does not permit punitive damages against a government agency or political subdivision. *See* 42 U.S.C. § 1981a(b).

## ARGUMENTS AND AUTHORITIES

**I.     Standard of review for a Motion to Dismiss under Fed. R. Civ. P. 12(b)(5).**

"A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant, making 'effective service a prerequisite to proceeding further in a case.'" *Goff v. Hukill*, 08-CV-71-TCK-FHM, 2010 WL 2595785, at *2 (N.D. Okla.

June 24, 2010) (quoting *Lampe v. Xouth, Inc.*, 952 F.2d 697, 71 (3d Cir. 1992)). Specifically, a "'Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint.'" *Goff*, 2010 WL 2595785, at *2 (N.D. Okla. June 24, 2010) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1353 (3d ed. 2004)). In *Goff*, Judge Kern specifically provided that improper service includes "serving an individual not authorized to accept service for a defendant." *Id.*

"In opposing a motion to dismiss for insufficient service of process, plaintiff bears the burden to make a *prima facie* case that he has satisfied statutory and due process requirements so as to permit the court to exercise personal jurisdiction over defendants." *Id.* The Court may consider affidavits and documentary evidence and while Plaintiff is entitled to the benefit of factual doubt, it is her burden to establish the validity of service. *Id.* Plaintiff "must demonstrate that the procedure employed by [her] to effect service satisfied the requirements of Rule 4 of the Federal Rules of Civil Procedure." *Driskell v. Thompson*, 2013 WL 5835114, at *2 (D. Colo. Oct. 30, 2013) (citing *Light v. Wolf*, 816 F.2d 746, 751 (D.C.Cir.1987)).

II.     **Plaintiff's claims should be dismissed as TCC was not properly served within the time allowed under Rule 4(m).**

Rule 4 of the Federal Rules of Civil Procedure requires a defendant be served within ninety days of the filing of the complaint. Plaintiff's Complaint was filed on May 25, 2021. *See* Complaint [Doc. No. 2]. Ninety days from the filing date was August 23, 2021—the date Plaintiff attempted service. To date, Plaintiff has not properly effected service on TCC.

Plaintiff is unable to meet her burden of establishing proper service of process upon TCC. TCC is a public institution established by the Oklahoma State Regents for Higher Education and is "entitled to the same privileges and [is] subject to the same laws as other member institutions of such State System." OKLA. STAT. tit. 70, § 4413. Therefore, the applicable rule for service of

3

process with regard to TCC, a public agency, is found under FED. R. CIV. P. 4(j)(2) which governs service upon "[a] state, a municipal corporation, or any other state-created governmental organization that is subject to suit." *See Cichocki v. Massachusetts Bay Cmty. Coll.*, 174 F. Supp. 3d 572, 573 (D. Mass. 2016) (applying FED. R. CIV. P. 4(j) to determine whether service of process was completed properly upon a community college).

FED. R. CIV. P. 4(j)(2) requires service by: "(A) delivering a copy of the summons and of the complaint to [the state-actor defendant's] chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such defendant." Here, Plaintiff has not shown that she properly served Defendant under either course of action.

### A. Plaintiff did not deliver the Amended Complaint and Summons to TCC's chief executive officer.

Plaintiff did not attempt service of her original Complaint, but attempted personal service of the Amended Complaint on TCC by signing the "service log book" and leaving two copies of both the Summons and Amended Complaint with the security guard on site at TCC. *See* Proof of Service [Doc. No. 7]. In his declaration, Plaintiff's counsel—who also acted as the process server—alleges the security guard's name began with the letter "h" and was possibly "Howard." *See* Jones Affidavit, ¶ 5 [Doc. No. 12-1]. TCC's President and CEO is Dr. Leigh Goodson. *See* Ex. 1, Goodson Affidavit. Dr. Goodson did not receive service of the Amended Complaint and Summons. *Id*. The security guards at 6111 Skelly Drive are not authorized to accept service on Dr. Goodson's behalf. *Id*. Under Rule 4(j)(2)(A), "delivering a copy" means through personal delivery to the actual individual. *See Riddle v. Wichita Pub. Sch., Unified, Sch. Dist. No. 259*, No. CIV.A.04-1400-MBL, 2005 WL 1563444, at *1 (D. Kan. June 30, 2005) ("'Delivering' means personal service, and does not authorize service by mail.") (citing *Punchard v. State of New*

4

*Mexico*, 1995 WL 638201, *1 (10th Cir. Oct.31, 1995)). *See also* § 1109 Service on States, Municipal Corporations, and Other Governmental Organizations—In General, 4B Fed. Prac. & Proc. Civ. § 1109 (4th ed.) ("the word 'delivering' in Rule 4(j) indicates that personal service should be made upon that particular individual."). Further, Plaintiff's counsel did not even inform the security guard that the Summons and Amended Complaint were to be delivered to Dr. Goodson. *See* Ex. 2, Howard Affidavit. Plainly, Plaintiff did not effect proper service pursuant to Rule 4(j)(2)(A).

    **B.**  **Plaintiff did not serve TCC in accordance with Oklahoma law.**

The second option for service under Rule 4(j)(2) is to serve a copy of the summons and complaint in the manner prescribed by the law of Oklahoma. Pursuant to the Oklahoma Rules of Civil Procedure, service of process by personal delivery "upon a state, county, school district, public trust or municipal corporation or other governmental organization" must be accomplished by:

> delivering a copy of the summons and of the petition to the officer or individual designated by specific statute; however, if there is no statute, then upon the chief executive officer or a clerk, secretary or other official whose duty it is to maintain the official records of the organization

OKLA. STAT. tit. 12, § 2004(C)(1)(c)(5). The Oklahoma Governmental Tort Claims Act ("GTCA")[1] provides this designation in a specific statute, stating:

> In all actions against the state, service shall be perfected by mailing, by certified mail, return receipt requested, a summons and a copy of the petition to the Attorney General. Claimant shall also mail, by certified mail, return receipt requested, a copy of the summons and a copy of the petition to the administrative head of the state agency or agencies involved and a copy of the summons and a copy of the

---

[1] "Tort" is defined broadly in the GTCA as "a legal wrong, independent of contract, involving violation of a duty imposed by general law, statute, the Constitution of the State of Oklahoma, or otherwise, resulting in a loss to any person, association or corporation as the proximate result of an act or omission of a political subdivision or the state or an employee acting with the scope of employment." *See* OKLA. STAT. tit. 51, § 152(17).

> petition to the Risk Management Administrator of the Purchasing Division of the Office of Management and Enterprise Services.

OKLA. STAT. tit. 51, § 163(E).[2] Setting aside the improper attempt to serve TCC directly, it is undisputed that Plaintiff failed to serve the Attorney General or the Risk Management Administrator. *See* Proof of Service [Doc. No. 7]. Consequently, Plaintiff's attempt at service under Oklahoma law was defective.

Even if the GTCA did not apply, Plaintiff still failed to properly serve TCC under Oklahoma's general service statute, noted above. *See* OKLA. STAT. tit. 12, § 2004(C)(1)(c)(5). As previously established, Plaintiff did not serve process on TCC's CEO; rather, service was attempted on a security guard at 6111 East Skelly Drive. *See* § I(A), *supra*. The security guards at that location are not charged with maintaining the official records of TCC. *See* Ex. 1, Goodson Affidavit. As such, Plaintiff did not effect service properly under Oklahoma's general service statute. *See Hukill v. Oklahoma Native Am. Domestic Violence Coal.*, 542 F.3d 794, 800 (10th Cir. 2008) (while Oklahoma requires substantial compliance—not strict compliance—with service statutes, there can be no substantial compliance when service is accepted or refused by an unauthorized person); *Goff*, 2010 WL 2595785, at *4 (same).

Critically, Plaintiff chose to attempt service through personal delivery. While her Response to the Court's Second Order to Show Cause [Doc. No. 12] is focused on the confusion her counsel allegedly suffered in properly effecting personal service, Plaintiff ignores that service could have been accomplished through the mail. Pursuant to OKLA. STAT. tit. 12, § 2004(C)(2)(c), service is effective on the state or other governmental organization when it is accepted or refused by an

---

[2] "State" is defined in OKLA. STAT. tit. 51, § 152 as "the State of Oklahoma or any office, department, agency, authority, commission, board, institution, hospital, **college**, university, public trust created pursuant to Title 60 of the Oklahoma Statutes of which the State of Oklahoma is the beneficiary, or other instrumentality thereof . . . ." *Id*. (emphasis added).

6

employee of the office of any listed official in the personal delivery statute who also regularly receives certified mail. Plaintiff easily could have mailed the Amended Complaint and Summons to the office of TCC's CEO.

Moreover, Plaintiff's attempted service on TCC through personal delivery under Oklahoma law is void because Plaintiff's counsel is not a sheriff, deputy sheriff, or licensed process server, nor was he specially appointed to serve process. *See* OKLA. STAT. tit. 12, § 2004(C)(1)(a).

Plaintiff's service of process upon Defendant was defective under Rule 4 and Oklahoma law. Therefore, because Plaintiff failed to properly serve TCC by August 23, 2021—90 days after the filing of the original complaint—the service period provided in FED. R. CIV. P. 4(m) has expired and Plaintiff's Amended Complaint must be dismissed.

### C. TCC's actual knowledge of the lawsuit does not excuse substantial compliance with Rule 4.

It is well established under Oklahoma law, and recognized by the Tenth Circuit, that TCC's actual knowledge of a lawsuit does not excuse Plaintiff's substantial compliance with Oklahoma's service statutes. *See Hukill*, 542 F.3d at 802 (citing *Graff v. Kelly*, 814 P.2d 489, 495 (Okla.1991); *Ferguson Enterprises, Inc. v. H. Webb Enterprises, Inc.*, 13 P.3d 480 (Okla.2000)). Similarly, the Federal Rules of Civil Procedure do not substitute actual knowledge for proper service: "The relevant standard under Rule 4(j)[3] is not whether defendants do or do not have 'actual knowledge' of a suit in which they are named. The standard is whether plaintiffs have shown 'good cause' for their failure." *Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1439 (10th Cir. 1994). In fact, "neither actual notice to the defendant, lack of prejudice to the defendant, nor prejudice to

---

[3] Rule 4 was subsequently amended and Rule 4(j) is now Rule 4(m). *See Espinoza v. United States*, 52 F.3d 838, 840 (10th Cir. 1995).

the plaintiff, whose claims will be time-barred, constitute good cause for failing to comply with the time requirements of Rule 4(j)." *Harper v. Rudek*, No. CIV-12-0449-HE, 2013 WL 1679985, at *2 (W.D. Okla. Apr. 17, 2013) (citing *Cloyd v. Arthur Andersen & Co., Inc.*, 25 F.3d 1056 (Table), at *2 (10th Cir.1994)). Oklahoma and federal law clearly dictate that TCC must receive proper service regardless of its knowledge of the lawsuit.

**D.     There is no good cause to extend the service window for Plaintiff.**

In her Response to the Court's Second Order to Show Cause [Doc. No. 12], Plaintiff alleges her service attempt was burdened by TCC and therefore, the Court should deem service effected or extend the time for service to be executed. While Rule 4(m) allows for the extension of time for service, the Plaintiff must show good cause as to why service was not properly effected within the provided window. "As a general matter, 'inadvertence or negligence alone do not constitute good cause' for failure of timely service." *Polovino v. Action No. 15CV-023-JHP PJC Int'l Bhd. of Elec. Workers, AFL-CIO*, No. 15-CV-023-JHP-PJC, 2015 WL 4716572, at *6 (N.D. Okla. Aug. 7, 2015) (citing *In re Kirkland*, 86 F.3d 172, 176 (10th Cir.1996)). Good cause requires a greater showing than excusable neglect and a plaintiff "that seeks to rely on the good cause provision must show meticulous efforts to comply with the rule." *Kirkland*, 86 F.3d 172 at 175-76.

Plaintiff has attempted to demonstrate good cause by claiming TCC affirmatively instructed her counsel to serve process at the "Skelly Drive building." *See* Plaintiff's Resp. to Show Cause [Doc. No. 12]. However, as stated above, TCC has no record of Plaintiff's counsel attempting to contact TCC prior to the attempted service date—August 23, 2021. *See* Ex. 3, Thompson Affidavit. Plaintiff's counsel's declaration indicates that he called and spoke with TCC on or around August 19, 2021, to ask for Dr. Goodson's address. *See* Jones Affidavit [Doc. No. 12-1, ¶¶ 1-3]. However, TCC reviewed all incoming phone calls to the Student Support Center and

8

College Switchboard—the main numbers listed for TCC—on that date and could not find any call from Plaintiff's counsel or anyone calling on his behalf. *See* Ex. 3, Thompson Affidavit.[4] Further, the conversation Plaintiff's counsel had on August 30 with TCC's Human Resources Department—after the Court's Second Order to Show Cause—indicates that he determined the service method by checking online:

> We have submitted an affidavit saying that we believe we did it correctly, and after submitting that affidavit, the Judge sent an Order saying, Order to show cause, which is basically like, uh, put up or shut up, like, I don't believe you, essentially. It said, uh, well, I see what you said, but, I don't believe, given this Affidavit, that Tulsa Community College was served correctly. And I'm just sitting here like . . . uh, **I do not know what to say, because uh, it, it's the address listed with the Oklahoma State business entity search and it says that's where you should do service**, and I, I'm the attorney, and I know I did service. I took photos. I was there. Like, I don't even know what to say. Like, I'm like, this is the best service that's ever been done, but, the Judge is like, saying, by September 9th, you shall file with the Court proof that service was effected correctly, and I'm just left here going, like, I don't even know. I've never seen a Court do this in my life. I, I've done this for more than ten years. I've never seen this in my life. I don't know what's happening, other than to say, can, can ya'll, can ya'll follow up, because I am, again, 99 percent certain ya'll got served correctly and it's in the log book and you have the lawsuit.

*See* Ex. 4, Recorded Conversation from August 30, 2021. Plaintiff's counsel never mentions a previous call with TCC or that he was told by TCC to serve process on Dr. Goodson by handing the Summons and Amended Complaint to a security guard and signing a log book. *Id.*

However, even if the affidavit submitted by Plaintiff's counsel is accurate, statements made by a telephone receptionist would not prevent TCC from denying proper service occurred. *See Huebner v. Rosen*, 81 F. App'x 276, 279 (10th Cir. 2003) (rejecting argument that defendant was estopped from challenging service of process based on representations to the plaintiff). *See also Chicago Heights Check Cashers, Inc. v. United States Postal Serv.*, 2018 WL 2450474, at *3 (N.D.

---

[4]Indeed, none of those calls involved anyone requesting to speak with TCC's legal counsel. *See* Ex. 3, Thompson Affidavit.

9

Ill. May 31, 2018) (granting motion to dismiss despite the plaintiff's allegations that it relied on the defendant's representations in serving process); *Vander Linden v. Wilbanks*, 128 F. Supp. 2d 900, 905–06 (D.S.C. 2000) (same). It is Plaintiff's duty to determine the proper method of service. *See e.g. Putnam v. Morris*, 833 F.2d 903, 905 (10th Cir. 1987) ("it is trial counsel's responsibility to monitor the activity of the process server and to take reasonable steps to assure that a defendant is timely served"). Plaintiff cannot rely on statements of an unknown TCC employee—who is not alleged to have any form of authority to bind TCC—to alleviate her obligation. This is especially true when Plaintiff cannot provide any identification information and there is no evidence that the conversation even took place. *See e.g. Goff*, 2010 WL 2595785, *2-4 (plaintiff was required to present evidence regarding the identity of the individual alleged to have accepted service on behalf of Rogers State University).

Plaintiff sat on her lawsuit and attempted to serve process on the very last day allowed pursuant to Rule 4(m). According to her counsel's representations to TCC, he looked up the service address online and attempted to service by handing the Summons and Amended Complaint to a security guard. The record clearly demonstrates Plaintiff's own negligence and dilatory conduct is what caused improper service, not TCC. Consequently, no good cause exists to extend the service window and Plaintiff's claims should be dismissed.[5] *See Putnam*, 833 F.2d at 905 (no abuse of discretion in dismissing action when the defendant was not timely served and the plaintiff's process server did not take reasonable actions to effect proper service); *Dunagan v. Lehnus*, No. 20-CV-0393-CVE-JFJ, 2021 WL 1234522, at *5 (N.D. Okla. Apr. 1, 2021) (no good cause when plaintiff made no attempt at service until advised the action was subject to dismissal); *Wilkinson*

---

[5]For the same reasons, as well as the fact that Plaintiff has made no effort to properly serve TCC since the Court notified her of the deficiency in her service attempt, the Court should decline a permissive extension of the time for service.

*v. Bode*, No. CIV-09-907-C, 2010 WL 1542411, at *1–2 (W.D. Okla. Apr. 15, 2010) (no good cause when the plaintiff attempted and failed to serve the defendant five times personally and one time by mail); *Polovino*, 2015 WL 4716572, at *6.

### III. Standard of review for a Motion to Dismiss under FED. R. CIV. P. 12(b)(6).

The Federal Rules of Civil Procedure require a pleading which states a claim for relief to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Failure to satisfy this standard constitutes a failure to state a claim upon which relief can be granted, and warrants dismissal upon a Rule 12(b)(6) motion to dismiss. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss under FED. R. CIV. P. 12(b)(6), the pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. While well-pleaded factual allegations are assumed true and viewed in the light most favorable to the plaintiff; a court, "[i]n ruling on a motion to dismiss . . . should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

### IV. TCC is immune from claims arising under Section 1981.

The Supreme Court of the United States has declared Section 1981 "does not provide a vehicle for remedying racial discrimination and retaliation in cases brought against state actors." *Hannah v. Cowlishaw*, 628 F. App'x 629, 631–32 (10th Cir. 2016) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 705 (1989)). Instead, a claim for damages against a state actor must be brought pursuant to Section 1983. *Id*. ("§ 1983 'provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state

11

actor."). As established above, TCC is an arm of the state and therefore a state actor. *See* OKLA. STAT. tit. 70, § 4413. *See also Englehart v. Bd. of Regents for the Oklahoma Agric. & Mech. Colleges*, No. 15-CV-138-JED-PJC, 2016 WL 3645193, at *3 (N.D. Okla. June 30, 2016) ("[t]he Tenth Circuit has 'consistently held' that state colleges and universities—as well as their governing boards of regents—are arms of the state and therefore enjoy Eleventh Amendment immunity."); *Fournerat v. Wisconsin L. Rev.*, No. CIV-09-391-M, 2010 WL 1875634, at *2 (W.D. Okla. May 10, 2010), aff'd, 420 F. App'x 816 (10th Cir. 2011) (stating that the Tenth Circuit has recognized the Board of Regents is a an arm of the state and a suit against the university or college is a suit against the board of regents). Consequently, Plaintiff's claims under Section 1981 may only be brought pursuant to Section 1983.

However, Plaintiff cannot cure this defect by simply re-pleading her claims under Section 1983. As explained below, Section 1983 allows for relief to be sought against individuals and municipalities—for certain limited claims—but not the state or arm thereof. Section 1983 reads as follows:

> Every **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 (emphasis added). In 1989, the Supreme Court held the term "person" does not include a state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65–66, 109 S. Ct. 2304, 2309, 105 L. Ed. 2d 45 (1989). "We hold that neither a State nor its officials acting in their official

capacities are 'persons' under § 1983." *Id*. Because TCC is an arm of the State of Oklahoma, it is not a "person" and cannot be liable under Section 1983. *See Spencer v. Fromme*, No. CIV-18-556-W, 2018 WL 11266760, at *2 (W.D. Okla. July 6, 2018), aff'd, 777 F. App'x 916 (10th Cir. 2019) ("section 1983 requires a plaintiff to show that a 'person' acted to deprive him of his constitutional rights; however, neither a State nor a department or agency that is considered an 'arm of the state' is a 'person' under this statute."). *See also Hall v. Oklahoma ex rel. Oklahoma Dep't of Hum. Servs.*, No. 09-CV-560-JHP-PJC, 2010 WL 1078448, at *2–3 (N.D. Okla. Mar. 18, 2010) (determining DHS, as an arm of the state, was not a person and immune from claims under Section 1983). Because TCC is a state agency, it is not a "person" as contemplated in Section 1983 and, therefore, it cannot be liable under that law.

Going hand-in-hand with the finding that a state, or arm thereof, is not a person under Section 1983 is the fact that the state, or arm thereof, enjoys sovereign immunity from suits under Section 1983 and Section 1981 pursuant to the Eleventh Amendment. "Eleventh Amendment immunity extends to the states, state officials, and to those governmental entities that are considered 'an arm of the state.'" *Greer v. Fallin*, No. CIV-14-1066-M, 2018 WL 1354454, at *6 (W.D. Okla. Feb. 15, 2018) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993)). As established at several points above, TCC is an arm of the state of Oklahoma.

Oklahoma has expressly retained Eleventh Amendment immunity. *See* OKLA. STAT. tit. 51, § 152.1(B). The Eleventh Amendment shields the state from suits under Section 1981 and Section 1983. *See Patillo v. Larned State Hosp.*, 462 F. App'x 780, 783 (10th Cir. 2012) (noting that Eleventh Amendment immunity has not been abrogated by Congress for claims under Section 1981 and Section 1983); *Lee v. Oklahoma*, No. CIV-13-1254-HE, 2014 WL 3689691, at *1 (W.D.

Okla. July 23, 2014) (stating Congress has not abrogated Eleventh Amendment immunity under Section 1981 and Section 1983 and noting Oklahoma has not waived Eleventh Amendment immunity).

Because TCC is an arm of the State of Oklahoma and the State of Oklahoma is immune from suits under Section 1981 and 1983, Plaintiff's claims arising under Section 1981 must fail. The Court should dismiss Plaintiff's First and Second Claims with prejudice, as they cannot be amended to state a valid claim against TCC.

**V.      Plaintiff's claims for punitive damages under Title VII must be dismissed.**

Plaintiff requests punitive damages with regard to her third and fourth claims, which are brought under Title VII. *See* Amended Complaint, p. 10 [Doc. No. 4]. However, Title VII does not permit punitive damages to be assessed against a public employer. "A complaining party may recover punitive damages under this section against a respondent **(other than a government, government agency or political subdivision)** if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a (emphasis added). Courts have routinely struck down attempts to claim punitive damages against the state or other public employers. *See Gupta v. Oklahoma City Pub. Sch.*, No. CIV-18-317-G, 2019 WL 896295, at *4 (W.D. Okla. Feb. 22, 2019) (collecting cases); *Tugmon v. Indep. Sch. Dist. No. 32 of Mayes Cty., Okla.*, No. 13-CV-11-JED-FHM, 2015 WL 1482524, at *5 (N.D. Okla. Mar. 31, 2015) ("[p]unitive damages are not recoverable against "a government, government agency or political subdivision" for a violation of Title VII. See 42 U.S.C. § 1981a(b)(1)"). Plainly, punitive damages under Title VII cannot be levied against TCC—a state actor.

## CONCLUSION

For the foregoing reasons, TCC respectfully requests the Court grant this Motion and dismiss all of Plaintiff's claims for failure to effect proper service. In the alternative, TCC respectfully requests the Court dismiss, with prejudice, Plaintiff's claims arising under Section 1981 and Plaintiff's claims for punitive damages arising under Title VII.

Respectfully submitted,

By: */s/ W. Kirk Turner*
    W. Kirk Turner, OBA #13791
    Harrison M. Kosmider, OBA #32036
    McAfee & Taft, A Professional Corporation
    Two West Second Street, Suite 1100
    Tulsa, Oklahoma 74103
    (918) 587-0000
    (918) 599-9317 (facsimile)
    kirk.turner@mcafeetaft.com
    harrison.kosmider@mcafeetaft.com

    **ATTORNEYS FOR DEFENDANT,**
    **TULSA COMMUNITY COLLEGE**

## CERTIFICATE OF SERVICE

☑   I hereby certify that on  September 24, 2021 , I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Thomas Landrum, Esq.

☑   I hereby certify that on   September 24, 2021  , I served the foregoing document by mail on the following, who are not registered participants of the ECF System:

Jeffrey D. Jones, *Esq*.
**THE JONES LAW FIRM**
523 East Pine Place
Tulsa, OK 74106-4301

                                          */s/ W. Kirk Turner*
                                          W. Kirk Turner